IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| IN RE: | § | |
|---|---|---|
| | § | |
| CAMERON LAMARR BURRELL, SR. | § | CASE NO. 18-52274-cag |
| | § | |
| DEBTOR | § | CHAPTER 7 |

## MOTION FOR RELIEF FROM STAY AND WAIVER OF
## 30-DAY HEARING REQUIREMENT PURSUANT TO 11 U.S.C. 362(e)

TO THE HONORABLE U. S. BANKRUPTCY JUDGE:

Santander Consumer USA Inc. ("Santander") moves the Court for an order for relief from the automatic stay and alternatively for adequate protection and in support thereof makes the following allegations:

I.

Cameron Lamarr Burrell, Sr. ("Debtor") filed a petition under Chapter 7 of the Bankruptcy Code on September 28, 2018.

II.

On May 9, 2015, Debtor executed a Retail Installment Contract ("Contract") payable to Santander in the principal sum of $36,596.12.

III.

As security for the Contract, Debtor granted to Santander a lien on that one certain 2014 DODGE RAM VIN: 3C6TR5DT7EG270356 ("Vehicle"). Santander's lien on the Vehicle is perfected by a notation on the Texas Certificate of Title.

IV.

The Debtor is past due for the February 23, 2017 through September 23, 2018 payments for a total amount past due of $17,272.50 and is therefore in default. The payoff on the Contract as of October 15, 2018 is $21,793.65.

V.

By reason of the past due status of the Contract, cause exists to terminate the stay pursuant to 11 U.S.C. 362(d)(1).

VI.

Alternatively, in the event the Court finds good cause not to vacate the automatic stay, Santander requests adequate protection.

WHEREFORE, Santander prays:

1. For an order granting relief from the automatic stay of 11 U.S.C., Section 362(a) of the Bankruptcy Code in accordance with 11 U.S.C. Section 362(d)(1);

2. For an order waiving the stay under Bankruptcy Rule 4001(a)(3);

3. Alternatively for adequate protection; and

4. Such other and further relief as is to the Court just and proper.

DATED this 23 day of October, 2018.

Respectfully submitted,

HALEY & OLSON, P.C.

By: /s/ Blake Rasner
Blake Rasner
*Attorney for Santander Consumer USA Inc.*
100 N. Ritchie Road, Suite 200
Waco, Texas 76712
Telephone: (254) 776-3336
Fax: (254) 776-6823
Bar Card No. 16555700
Email: brasner@haleyolson.com

## CERTIFICATE OF SERVICE

I certify that on October 23, 2018 a true and correct copy of the above and foregoing was served upon the following parties via electronic means as listed on the court's ECF noticing system or by regular first class mail:

Cameron Lamarr Burrell, Sr.- Pro Se
*Debtor*
8302 Jaybrook
Converse, TX 78109

Johnny W Thomas
*Chapter 7 Trustee*
St Paul Square
1153 E Commerce
San Antonio, TX 78205

Kirk A. Schwartz
*Attorney for Nationstar Mortgage LLC d/b/a Mr. Cooper*
SHAPIRO SCHWARTZ, LLP
13105 Northwest Freeway, Suite 1200
Houston, TX 77040

Don Stecker
*Attorney for Bexar County*
LINEBARGER GOGGAN BLAIR & SAMPSON, LLP
711 Navarro Street, Ste 300
San Antonio, TX 78205

_____
Blake Rasner

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| CAMERON LAMARR BURRELL, SR. | § § | CASE NO. 18-52274-cag |
| DEBTOR | § § | CHAPTER 7 |

## SUMMARY OF EXHIBITS

Exhibit A     Retail Installment Contract dated May 9, 2015, in the original principal sum of $36,596.12; and

Exhibit B     Texas Certificate of Title dated June 24, 2015.

# EXHIBIT A



# RETAIL INSTALLMENT CONTRACT

Contract Number _____  Contract Date  May 09, 2015

Seller  CarMax Auto Superstores, Inc.          11880 IH 35 NORTH, SAN ANTONIO, TX      78233
            Name                                            Address                              Zip Code
Buyer   CAMERON LAMARR BURRELL                  8323 NORCREST DR, CONVERSE, TX          78109
            Name                                            Address                              Zip Code
Co-Buyer _____
            Name                                            Address                              Zip Code

The Buyer is referred to as "you" or "your". The Seller is referred to as "we" or "us". This contract may be transferred by the Seller.
**Promise To Pay.** The credit price is shown below as the "Total Sale Price". The "Cash Price" is also shown below. You agree to pay us the Amount Financed, Finance Charge, and any other charges in this contract. You agree to make payments according to the Payment Schedule in this contract. If more than one person signs as Buyer, you agree to keep all the promises in this contract even if the others do not.

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your downpayment of $ 1,133.48 |
|---|---|---|---|---|
| 18.00 % | $ 23,951.56  e* | $ 36,596.12 | $ 60,547.68  e* | $ 61,681.16  e* |

e means an estimate

Your Payment Schedule will be:

| Number of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 72 | $ 840.94 | Monthly, beginning Jun 23, 2015 |

**Security.** We will have a security interest in the motor vehicle being purchased.
**Late Charge.** If we do not receive your entire payment within 15 days after it is due, you will pay a late charge of 5% of the scheduled payment.

**Prepayment.** If you pay all that you owe early, you will not have to pay a penalty.
**Additional Information.** See this document for more information about nonpayment, default, security interests, and any required repayment in full before the scheduled date.

---

**Optional GAP Waiver Agreement (GAP contract).** A GAP contract is a debt cancellation agreement. It is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. The charge for a GAP contract is in item D.5. Your GAP contract is a part of this Contract. See your GAP contract for details on the protection it provides.

Term _____N/A_____ (in months)

WE WILL CANCEL CERTAIN AMOUNTS YOU OWE UNDER THIS CONTRACT IN THE CASE OF A TOTAL LOSS OR THEFT OF THE VEHICLE AS STATED IN THE GAP CONTRACT. You can cancel the GAP contract without charge for a period of 30 days from the date of this contract, or for the period stated in the GAP contract, whichever period ends later.

I want the optional GAP contract.
Buyer Signs: _____

**\*A documentary fee is not an official fee. A documentary fee is not required by law, but may be charged to buyers for handling documents relating to the sale. A documentary fee may not exceed a reasonable amount agreed to by the parties. This notice is required by law.**

**\*Un cargo documental no es un cargo oficial. La ley no exige que imponga un cargo documental. Pero éste podría cobrarse a los compradores por el manejo de la documentación en relación con la venta. Un cargo documental no puede exceder una cantidad razonable acordada por las partes. Esta notificación se exige por ley.**

Vehicle you are purchasing:
Year/Make/Model  2014/DODGE/RAM 2500
VIN  3C6TR5DT7EG270356
New _____  Used __X__
You have thoroughly inspected, accepted, and approved of the Vehicle in all respects.
Use for which purchased:
Personal, Family, or Household __X__
Business or Commercial _____ Agricultural _____

*Trade-In(s)*:
Year/Make/Model  2013/ DODGE/ RAM 1500
VIN  1C6RR6FT9DS546962
Year/Make/Model  N/A
VIN  N/A

### ITEMIZATION OF AMOUNT FINANCED

| | |
|---|---|
| **A. CASH PRICE** | |
| 1. Cash Price of Vehicle | $ 30,998.00 |
| 2. Cash Price of CarMax Accessories | $ 0.00 |
| 3. Sales/Excise Tax | $ 656.13 |
| 4. Other: N/A | $ 0.00 |
| 5. Other: N/A | $ 0.00 |
| 6. Total Cash Price [1 through 5] | $ 31,654.13 |
| **B. DOWNPAYMENT AND CREDITS** | |
| 1. Cash Downpayment | $ 1,133.48 |
| 2. Manufacturer's Rebate | $ 0.00 |
| 3. Credit From "Trade-In" Sold to CarMax | |
|    a. Value of "Trade-In" | $ 20,500.00 |
|    b. Proceeds from "Trade-In" Retained by Buyer | $ 0.00 |
|    c. Pay-Off of "Trade-In" | $ 24,810.33 |
|    d. Net Value of "Trade-In" [a minus b minus c, if negative, enter "0" and see line D.6. below] | $ 0.00 |
| 4. Other: N/A | $ 0.00 |
| 5. Other: N/A | $ 0.00 |
| 6. Total Downpayment [1 through 5] | $ 1,133.48 |
| **C. UNPAID BALANCE OF CASH PRICE [A.6. minus B.6.]** | $ 30,520.65 |
| **D. OTHER CHARGES INCLUDING AMOUNTS PAID TO OTHERS ON YOUR BEHALF** (Seller may keep part of these amounts.) | |
| 1. Documentary Fee* | $ 125.00 |
| 2. Dealer's Inventory Tax | $ 71.39 |
| 3. To Public Officials or State | |
|    a. Government Certificate of Title Fee | $ 33.00 |
|    b. Government License and/or Registration Fees | $ 79.25 |
|    c. Plate Transfer Fee | $ 0.00 |
|    d. Inspection Fees | $ 7.50 |
|    e. N/A | $ 0.00 |
| 4. To CNA National Warranty Corporation for Optional Extended Service Contract | $ 1,449.00 |
| 5. Optional GAP Waiver Agreement (GAP Contract) | $ 0.00 |
| 6. To SANTANDER CONSUMER USA for Pay-Off of the "Trade-In" where Pay-Off exceeds value of "Trade-In" [B(3)(c) minus B(3)(a)] | $ 4,310.33 |
| 7. Total of Other Charges and Amounts Paid to Others on Your Behalf [1 through 6] | $ 6,075.47 |
| **E. AMOUNT FINANCED [C plus D.7.]** | $ 36,596.12 |

Taxes, title fee, license fee, and any state inspection fee (except for $7.00 of each such inspection fee that will be retained by Seller) will be paid by Seller to government agencies. Documentary fee and deputy service fee will be retained by Seller and the Seller may also retain parts of the insurance, service contracts, and other charges.

---

This contract has 4 pages, plus any optional GAP Waiver Agreement. This is page 1. By initialing below you represent that you have read and agree to all provisions on all pages.

Buyer's Initials __CLB__                           Co-Buyer's Initials _____

# RETAIL INSTALLMENT CONTRACT
## Other Important Agreements

**YOUR REPRESENTATIONS.** You promise that you have given true and correct information in your credit application. You understand that in entering this contract we have relied on the representations you have made to us. Upon request, you agree to provide us with documents and other information necessary to verify any item contained in your credit application.

**LATE CHARGE.** You will pay us a late charge as agreed to in this contract when it accrues.

**RETURNED CHECK CHARGE.** You will pay us a returned check charge of $30 for each check that is not honored by your financial institution.

**FINANCE CHARGES.** We figure the Finance Charge using the true daily earnings method as defined by the Texas Finance Code. Under the true daily earnings method, the Finance Charge will be figured by applying the daily rate to the unpaid portion of the Amount Financed for the number of days the unpaid portion of the Amount Financed is outstanding. The daily rate is 1/365th of the Annual Percentage Rate. The unpaid portion of the Amount Financed does not include late charges or return check charges.

**HOW WE WILL APPLY YOUR PAYMENTS.** We will apply your payments in the following order:
   (1) earned but unpaid finance charge; and
   (2) to anything else you owe under this agreement.

**HOW LATE OR EARLY PAYMENTS CHANGE WHAT YOU MUST PAY.** We based the Finance Charge, Total of Payments, and Total Sale Price as if all payments were made as scheduled. If you do not timely make all your payments in at least the correct amount, you will have to pay more Finance Charge and your last payment will be more than your final scheduled payment. If you make your scheduled payments early, your Finance Charge will be reduced (less). If you make your scheduled payments late, your Finance Charge will increase.

**INTEREST AFTER MATURITY.** If you do not pay all you owe when the final payment becomes due, or you do not pay all that you owe if we demand payment in full under this contract, you will pay an interest charge on the amount that is still unpaid. The amount owed will continue to accrue finance charge or interest at the Annual Percentage Rate shown on Page 1 of this contract or the highest rate allowed by law until paid in full.

**TRANSFER OF RIGHTS.** We may transfer this contract to another person. That person will then have all our rights, privileges, and remedies.

**USE AND TRANSFER OF THE MOTOR VEHICLE.** You will not sell or transfer the motor vehicle without our written permission. If you do sell or transfer the motor vehicle, this will not release you from your obligations under this contract, and we may charge you a transfer of equity fee of $25.00. You will promptly tell us in writing if you change your address or the address where you keep the motor vehicle. You will not remove the motor vehicle from Texas for more than 30 days unless you first get our written permission.

**CARE OF THE MOTOR VEHICLE.** You agree to keep the motor vehicle free from all liens, and claims except those that secure this contract. You will timely pay all taxes, fines, or charges pertaining to the motor vehicle. You will keep the motor vehicle in good repair. You will not allow the motor vehicle to be seized or placed in jeopardy or use it illegally. You must pay all you owe even if the motor vehicle is lost, damaged or destroyed. If a third party takes a lien or claim against or possession of the motor vehicle, we may pay the third party any cost required to free the motor vehicle from all liens or claims. We may immediately demand that you pay us the amount paid to the third party for the motor vehicle. If you do not pay this amount, we may repossess the motor vehicle and add that amount to the amount you owe. If we do not repossess the motor vehicle, we may still demand that you pay us, but we cannot compute a finance charge on this amount.

**AGREEMENT TO KEEP MOTOR VEHICLE INSURED.** You agree to have physical damage insurance covering loss or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. The insurance must include collision coverage and either comprehensive or fire, theft, and combined additional coverage.

**OUR RIGHT TO PURCHASE REQUIRED INSURANCE IF YOU FAIL TO KEEP THE MOTOR VEHICLE INSURED.** If you fail to give us proof that you have insurance, we may buy physical damage insurance. We may buy insurance that covers your interest and our interest in the motor vehicle, or we may buy insurance that covers our interest only. You will pay the premium for the insurance and a finance charge at the contract rate. If we obtain collateral protection insurance, we will mail notice to your last known address shown in your file.

**PHYSICAL DAMAGE INSURANCE PROCEEDS.** You must use physical damage insurance proceeds to repair the motor vehicle, unless we agree otherwise in writing. However, if the motor vehicle is a total loss, you must use the insurance proceeds to pay what you owe us. You agree that we can use any proceeds from insurance to repair the motor vehicle, or we may reduce what you owe under this contract. If we apply insurance proceeds to the amount you owe, they will be applied to your payments in the reverse order of when they are due. If your insurance on the motor vehicle or credit insurance doesn't pay all you owe, you must pay what is still owed. Once all amounts owed under this contract are paid, any remaining proceeds will be paid to you.

**RETURNED OPTIONAL SERVICE AND GAP CONTRACT CHARGES.** If we get a refund on service or GAP contracts, or other contracts included in the cash price, we will subtract it from what you owe. Once all amounts owed under this contract are paid, any remaining refunds will be paid to you.

**APPLICATION OF CREDITS.** Any credit that reduces your debt will apply to your payments in the reverse order of when they are due, unless we decide to apply it to another part of your debt. The amount of the credit and all finance charge or interest on the credit will be applied to your payments in the reverse order of your payments.

**SECURITY INTEREST.** To secure all you owe on this contract and all your promises in it, you give us a security interest in:
- The motor vehicle including all accessories and parts now or later attached, and any other goods financed in this contract;
- All insurance proceeds and other proceeds received for the motor vehicle;
- Any GAP, service contract or other contract financed by us and any proceeds of those contracts; and
- Any refunds of charges included in this contract for GAP or service contracts.

This security interest also secures any extension or modification of this contract. The certificate of title must show our security interest in the motor vehicle.

**DEFAULT.** You will be in default if:
- You do not pay any amount when it is due;
- You break any of your promises in this agreement;
- You allow a judgment to be entered against you or the collateral; or
- You file bankruptcy, bankruptcy is filed against you, or the motor vehicle becomes involved in a bankruptcy.

If you default, we can exercise our rights under this contract and our other rights under the law.

**OUR RIGHT TO DEMAND PAYMENT IN FULL.** If you default, or we believe in good faith that you are not going to keep any of your promises, we can demand that you immediately pay all that you owe. We don't have to give you notice that we are demanding or intend to demand immediate payment of all that you owe.

**REPOSSESSION:** If you default, we may repossess the motor vehicle from you if we do so peacefully. If any personal items are in the motor vehicle, we can store them for you and give you written notice at your last address shown on our records within 15 days of discovering that we have your personal items. If you do not ask for these items back within 31 days from the day we mail or deliver the notice to you, we may dispose of them as applicable law allows. Any accessory, equipment, or replacement part stays with the motor vehicle.

**YOUR RIGHT TO REDEEM:** If we take your motor vehicle, we will tell you how much you have to pay to get it back. If you do not pay us to get the motor vehicle back, we can sell it or take other action allowed by law. Your right to redeem ends when the motor vehicle is sold or we have entered into a contract for sale or accepted the collateral as full or partial satisfaction of a contract.

**DISPOSITION OF THE MOTOR VEHICLE:** If you don't pay us to get the motor vehicle back, we can sell it or take other action allowed by law. We will send you notice at least 10 days before we sell it. We can use the money we get from selling it to pay allowed expenses and to reduce the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the motor vehicle, holding it, preparing it for sale, and selling it. If any money is left, we will pay it to you unless we must pay it to someone else. If the money from the sale is not enough to pay all you owe, you must pay the rest of what you owe us plus interest. If we take or sell the motor vehicle, you will give us the certificate of title and any other document required by state law to record transfer of title.

**COLLECTION COSTS:** If we hire an attorney who is not our employee to enforce this contract, you will pay reasonable attorney's fees and court costs as the applicable law allows.

**CANCELLATION OF OPTIONAL GAP AND SERVICE CONTRACTS:** This contract may contain charges for GAP or service contracts or for services included in the cash price. If you default, you agree that we can claim benefits under these contracts to the extent allowable, and terminate them to obtain refunds of unearned charges to reduce what you owe or repair the motor vehicle.

**LEGAL LIMITATIONS ON OUR RIGHTS:** If we don't enforce our rights every time, we can still enforce them later. We will exercise all of our rights in a lawful way. You don't have to pay finance charge or other amounts that are more than the law allows. This provision prevails over all other parts of this contract and over all our other acts.

**"TRADE-IN" AND DOWNPAYMENT.** You promise that you own and have valid title to any vehicle you sold to us as a "Trade-In." You represent that any "Trade-In" vehicle is free from any lien or security interest except as you have disclosed to us in writing. You promise that you have made the downpayment shown in the Itemization of Amount Financed on Page 1 of this contract and that you have not borrowed it.

**COMMUNICATIONS.** You agree that we may monitor and record telephone calls regarding this contract. You expressly consent that we may contact you (by calls, emails, text messages or other electronic messages) for any purpose related to this contract by any means, including but not limited to the use of prerecorded/artificial voice messages or automatic telephone dialing devices. Your express consent applies to any email addresses or telephone numbers we obtain or you provide in any manner and at any time, including email addresses or cellular telephone numbers for which you may incur voice, data or other charges.

**APPLICABLE LAW.** Federal and Texas law apply to this contract.

---

This contract has 4 pages, plus any optional GAP Waiver Agreement. This is page 2. By initialing below you represent that you have read and agree to all provisions on all pages.

Buyer's Initials  CLB                              Co-Buyer's Initials _____

# RETAIL INSTALLMENT CONTRACT
## Other Important Agreements

### ARBITRATION PROVISION

This Arbitration Provision describes when and how a Claim (defined below) shall be arbitrated. Arbitration is a way of resolving disputes before one or more neutral persons, instead of having a trial in court before a judge and/or jury. **By signing this Contract, you and we agree to be bound by the terms of this Arbitration Provision.**

For purposes of this Arbitration Provision, references to "we," "us" and "our" mean the Seller, including its respective subsidiaries, affiliates, agents, employees and officers, or anyone to whom the Seller transfers its rights under the Contract.
IF YOU OR WE CHOOSE ARBITRATION, THEN ARBITRATION SHALL BE MANDATORY, AND:

- ANY CLAIM WILL BE DECIDED BY ARBITRATION AND NOT IN COURT OR BY A JURY TRIAL.
- DISCOVERY AND RIGHTS TO APPEAL ARE LIMITED BY THE ARBITRATION RULES OF THE ARBITRATION ADMINISTRATOR.
- YOU GIVE UP YOUR RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF A CLASS IN A CLASS ACTION ("CLASS ACTION WAIVER").
- OTHER RIGHTS THAT YOU OR WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

a. **What Claims are Covered.** A "Claim" is any claim, dispute or controversy between you and us that in any way arises from or relates to this consumer credit sale, the purchase you are financing by way of this Contract, the Vehicle and related goods and services that are the subject of the purchase and this Contract, or the collection or servicing of this Contract, including but not limited to:

- Initial claims, counterclaims, cross-claims and third-party claims;
- Disputes based on contract, tort, consumer rights, fraud and other intentional torts (at law or in equity, including any claim for injunctive or declaratory relief);
- Disputes based on constitutional grounds or on laws, regulations, ordinances or similar provisions; and
- Disputes about the validity, enforceability, arbitrability or scope of this Arbitration Provision or this Contract, subject to paragraph (f) of this Arbitration Provision.

b. **Commencing Arbitration.** Either you or we may require any Claim to be arbitrated by first sending to the other party, by certified mail, a written notice of dispute ("Notice"). This Notice shall (1) describe the nature and basis of the Claim and (2) set forth the specific relief sought. If we do not reach an agreement to resolve the Claim within 30 days after the Notice is received, you or we may commence an arbitration proceeding.

Arbitration of a Claim must comply with this Arbitration Provision and the applicable rules and procedures of the arbitration Administrator. Arbitration is not mandatory for an individual Claim that you or we may choose to bring in small claims court or the state's equivalent court, if any. If that Claim is transferred, removed or appealed to a different court, you or we then may choose arbitration.

c. **Choosing the Administrator.** If you initiate the arbitration proceeding, you may choose either of the following arbitration Administrators: (1) American Arbitration Association, 120 Broadway, New York, NY 10271, or (2) JAMS, 1920 Main Street, Suite 300, Irvine, CA 92614. The Administrator you choose will have rules that apply to the proceeding. Important information regarding the arbitration process and more complete information regarding arbitration procedures may be found at either Administrator's website. If the Administrator you choose is unable or unwilling or ceases to serve as the Administrator, you or we may choose the other Administrator. If both Administrators are unable or unwilling or cease to serve as the Administrator, you or we may choose another Administrator, subject to the other's approval. In all cases, any arbitrator must be a lawyer or a retired judge with at least 10 years of legal experience. If we initiate the arbitration proceeding, we will give you 20 days to choose the Administrator. If you do not choose the Administrator within that time, we will choose one for you. No matter which Administrator is chosen, you shall have the right to be represented by an attorney of your own choosing, subject to any limitations in the Administrator's rules.

d. **Choosing the Location.** Any arbitration hearing that you attend must take place at a location reasonably convenient to your residence.

e. **Paying for Arbitration.** Each Administrator charges fees to administer an arbitration proceeding. This may include fees not charged by a court. When you choose an Administrator, you should carefully review the fees charged by the Administrator. The fees and costs of any arbitration, including any initial filing fees, shall be paid in accordance with the rules and procedures of the Administrator. Each party must pay the expense of that party's attorneys, experts, and witnesses, regardless of which party prevails in the arbitration, unless applicable law or the Administrator's rules, procedures or standards provide otherwise.

f. **Class Action Waiver. You give up your right to participate in a class action. This means that you may not be a representative or member of any class of claimants or act as a private attorney general in court or in arbitration with respect to any Claim.** Further, unless both you and we agree otherwise, the arbitrator may not consolidate more than one person's Claim or Claims. Notwithstanding any other part of this Arbitration Provision, the validity and effect of the Class Action Waiver must be determined only by a court and not by an arbitrator. If a court limits or voids the Class Action Waiver, then this entire Arbitration Provision (except for this paragraph) will be null and void.

g. **Right to Discovery.** The parties shall have the right to discovery of non-privileged information and documents relevant to the Claim, subject to the rules and procedures of the Administrator.

h. **Arbitration Result and Right of Appeal.** Judgment upon the award given by the arbitrator may be entered in any court having jurisdiction. In response to a timely request from either party, the arbitrator must provide a brief written explanation of the basis for any award. The arbitrator's decision is final and binding, except for any right of appeal provided by the Federal Arbitration Act. Any party can appeal the award to a three-arbitrator panel administered by the Administrator, which must reconsider any aspect of the initial award requested by the appealing party. Reference in this Arbitration Provision to the "arbitrator" means the panel of arbitrators if an appeal of the arbitrator's decision has been taken. Subject to applicable law, costs of such an appeal will be borne by the appealing party regardless of the outcome of the appeal, unless applicable law or the Administrator's rules provide otherwise. However, we will consider any good faith, reasonable request for us to pay all or any part of those fees if you are the appealing party.

i. **Governing Law.** This Arbitration Provision is governed by the Federal Arbitration Act and not by any state arbitration law. The arbitrator must apply applicable statutes of limitations and claims of privilege recognized at law, and applicable substantive law consistent with the Federal Arbitration Act. The arbitrator is authorized to award all individual remedies permitted by the substantive law that would apply if the action were pending in court.

j. **Rules of Interpretation.** This Arbitration Provision survives the repayment of all amounts owed to us, the transfer of the Contract, and any bankruptcy by you, to the extent not inconsistent with applicable bankruptcy law. Except as provided in paragraph (f), if any part of this Arbitration Provision is determined to be invalid or unenforceable, this Arbitration Provision and the Contract will remain enforceable. In the event of a conflict or inconsistency between this Arbitration Provision and the applicable arbitration rules or the other provisions of this Contract or any other contract between you and us, this Arbitration Provision will govern.

---

This contract has 4 pages, plus any optional GAP Waiver Agreement. This is page 3. By initialing below you represent that you have read and agree to all provisions on all pages.

Buyer's Initials ___CLB___          Co-Buyer's Initials _____

# RETAIL INSTALLMENT CONTRACT

Other Important Agreements

## NO LIABILITY INSURANCE INCLUDED
THIS CONTRACT DOES NOT INCLUDE INSURANCE COVERAGE FOR PERSONAL LIABILITY AND PROPERTY DAMAGE CAUSED TO OTHERS.

**PROPERTY INSURANCE:** You must keep the collateral insured against damage or loss in the amount you owe. You must keep this insurance until you have paid all that you owe under this contract. You may obtain property insurance from anyone you want or provide proof of insurance you already have. The insurer must be authorized to do business in Texas. You agree to give us proof of property insurance. You must name us as the person to be paid in the event of damage or loss.

YOUR INSURANCE INFORMATION
LIENHOLDER/LOSS-PAYEE Santander Consumer USA   INSURED'S NAME CAMERON L BURRELL
PHYSICAL DAMAGE DEDUCTIBLES -- COMPREHENSIVE $ 500.00   COLLISION $ 500.00
INSURANCE COMPANY USAA
POLICY NUMBER _____   EFFECTIVE DATE 05/09/2015   EXPIRATION DATE 10/13/2015
INSURANCE AGENT NAME USAA AGENT   TELEPHONE NUMBER _____

You agree that you have or will obtain the required insurance coverage as shown above and you acknowledge that this is required by the Agreement To Keep Vehicle Insured section on Page 2 of this contract.

**USED CAR BUYERS GUIDE.** THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

**SPANISH TRANSLATION:** GUÍA PARA COMPRADORES DE VEHÍCULOS USADOS. LA INFORMACIÓN QUE VE EN EL FORMULARIO DE LA VENTANILLA PARA ESTE VEHÍCULO FORMA PARTE DEL PRESENTE CONTRATO. LA INFORMACIÓN DEL FORMULARIO DE LA VENTANILLA DEJA SIN EFECTO TODA DISPOSICIÓN EN CONTRARIO CONTENIDA EN EL CONTRATO DE VENTA.

The following notice applies only to purchases primarily for personal, family, or household purposes.

**NOTICE:** ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

**SELLER'S DISCLAIMER OF WARRANTIES.** UNLESS THE SELLER MAKES A WRITTEN WARRANTY, OR ENTERS INTO A SERVICE CONTRACT WITHIN 90 DAYS FROM THE DATE OF THIS CONTRACT, THE SELLER MAKES NO WARRANTIES, EXPRESS OR IMPLIED, ON THE MOTOR VEHICLE, AND THERE WILL BE **NO IMPLIED WARRANTIES OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE.** THIS PROVISION DOES NOT AFFECT ANY WARRANTIES COVERING THE MOTOR VEHICLE THAT THE MOTOR VEHICLE MANUFACTURER MAY PROVIDE.

**VEHICLE RETURN POLICY.** You may return the vehicle to CarMax for a refund within 5 calendar days if the condition of the vehicle does not change. This policy only applies to used vehicles.

**INTEGRATION AND SEVERABILITY CLAUSE.** This contract contains the entire agreement between you and us relating to the sale and financing of the vehicle. If any part of this contract is not valid, all other parts stay valid.

Any change to this contract must be in writing. Both you and we must sign it. No oral modifications to this contract are binding.

Buyer _Cameron L Burrell_   Co-Buyer _____

**CONSUMER WARNING:** Notice to the buyer—Do not sign this contract before you read it or if it contains any blank spaces. You are entitled to a copy of the contract you sign. Under the law, you have the right to pay off in advance all that you owe and under certain conditions may save a portion of the finance charge. You will keep this contract to protect your legal rights.

This contract has 4 pages, plus any optional GAP Waiver Agreement. This is page 4. By signing below you represent that you have read and agree to the terms on all pages of this contract, including the arbitration provision on page 3. You acknowledge receipt of a completed copy of this contract and confirm that before you signed it you were free to take it and review it.

Seller __CarMax Auto Superstores, Inc.__   Buyer's Signature _Cameron L Burrell_
By _____   Co-Buyer's Signature _____

THIS CONTRACT IS NOT VALID UNTIL YOU AND WE SIGN IT.

## ASSIGNMENT

Seller hereby sells, assigns and transfers to __Santander Consumer USA__ (Assignee) this contract, all obligations of Buyer and Co-Buyer hereunder, all rights, powers, and privileges herein given to Seller, and all right, title, and interest of Seller in and to the property securing this contract. If on the date of this assignment there is in effect a Dealer Agreement between Seller and Assignee pertaining to the sale of contracts to Assignee by Seller, the sale and assignment of this contract to Assignee is made subject to all the terms and conditions of that Dealer Agreement.

Seller/Assignor _____
Date __May 09, 2015__   Title __BDH__

# EXHIBIT B

Upon sale of this vehicle, the purchaser must apply for a new title within 30 days unless the vehicle is purchased by a dealer. Until a new title is issued, the vehicle record will continue to reflect the owner's name listed on the current title. 'SEE BACK OF TAB FOR ADDITIONAL INFORMATION.

SANTANDER CONSUMER USA
PO BOX 961288
FORT WORTH, TX 76161

▼ DETACH HERE ▼

# TEXAS CERTIFICATE OF TITLE

TEXAS DEPARTMENT OF MOTOR VEHICLES



| VEHICLE IDENTIFICATION NUMBER | YEAR MODEL | MAKE OF VEHICLE | BODY STYLE |
|---|---|---|---|
| 3C6TR5DT7EG270356 | 2014 | DODG | PK |

| TITLE/DOCUMENT NUMBER | DATE TITLE ISSUED |
|---|---|
| 01535342170150103 | 06/24/2015 |

MODEL | MFG CAPACITY IN TONS | WEIGHT | LICENSE NUMBER

WEIGHT: 5000

PREVIOUS OWNER
CARMAX AUTO SUPERSTORES

ODOMETER READING
29969

OWNER
CAMERON LAMARR BURRELL
8323 NORCREST DR
CONVERSE, TX 78109

REMARK(S)
ACTUAL MILEAGE

X _____
SIGNATURE OF OWNER OR AGENT MUST BE IN INK

UNLESS OTHERWISE AUTHORIZED BY LAW, IT IS A VIOLATION OF STATE LAW TO SIGN THE NAME OF ANOTHER PERSON ON A CERTIFICATE OF TITLE OR OTHERWISE GIVE FALSE INFORMATION ON A CERTIFICATE OF TITLE.

DATE OF LIEN | 1ST LIENHOLDER
05/09/2015 | SANTANDER CONSUMER USA
            PO BOX 961288
            FT WORTH, TX 76161

1ST LIEN RELEASED _____ DATE
BY _____ AUTHORIZED AGENT

DATE OF LIEN | 2ND LIENHOLDER

2ND LIEN RELEASED _____ DATE
BY _____ AUTHORIZED AGENT

DATE OF LIEN | 3RD LIENHOLDER

3RD LIEN RELEASED _____ DATE
BY _____ AUTHORIZED AGENT

IT IS HEREBY CERTIFIED THAT THE PERSON HEREIN NAMED IS THE OWNER OF THE VEHICLE DESCRIBED ABOVE WHICH IS SUBJECT TO THE ABOVE LIENS.

**RIGHTS OF SURVIVORSHIP AGREEMENT**
WE, THE MARRIED PERSONS WHOSE SIGNATURES APPEAR HEREIN, HEREBY AGREE THAT THE OWNERSHIP OF THE VEHICLE DESCRIBED ON THIS CERTIFICATE OF TITLE SHALL FROM THIS DAY FORWARD BE HELD JOINTLY, AND IN THE EVENT OF DEATH OF ANY OF THE PERSONS NAMED IN THE AGREEMENT, THE OWNERSHIP OF THE VEHICLE SHALL VEST IN THE SURVIVOR(S)

SIGNATURE _____ DATE
SIGNATURE _____ DATE
SIGNATURE _____ DATE

FORM 30-C REV. 05/2016    DO NOT ACCEPT TITLE SHOWING ERASURE, ALTERATION, OR MUTILATION.

Whenever you sell or trade in a vehicle, be sure to **protect yourself by filing the Vehicle Transfer Notification online** at _____ The notification removes your responsibility for anything the buyer might do with the vehicle. It's free!

**You ONLY have 30 days to submit the Vehicle Transfer Notification from the date you sell or trade in the vehicle to remove your liability.**

Before you buy, do a Title Check. For more information, go to _____ and click on the "Title Check" icon.

---

**WHEN VEHICLE IS SOLD, TITLE HOLDER MUST ASSIGN AND FURNISH THIS TITLE INDICATING A DATE OF SALE TO THE PURCHASER WHO MUST FILE APPLICATION WITH COUNTY TAX ASSESSOR-COLLECTOR WITHIN 30 DAYS TO AVOID PENALTY.**

▶ **FEDERAL AND STATE LAW REQUIRES THAT YOU STATE THE MILEAGE IN CONNECTION WITH THE TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES AND/OR IMPRISONMENT.**

### ASSIGNMENT OF TITLE

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
▶ _____ ODOMETER READING (No Tenths)
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale _____

_____ Signature of Seller/Agent _____ Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

_____ Signature of Buyer/Agent _____ Printed Name (same as signature)

### FIRST REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address.

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
▶ _____ ODOMETER READING (No Tenths)
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale _____ | Dealer No. _____

Dealer's Name _____

_____ Agent's Signature _____ Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

_____ Signature of Buyer/Agent _____ Printed Name (same as signature)

### SECOND REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address.

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
▶ _____ ODOMETER READING (No Tenths)
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale _____ | Dealer No. _____

Dealer's Name _____

_____ Agent's Signature _____ Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

_____ Signature of Buyer/Agent _____ Printed Name (same as signature)

### THIRD REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address:

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
▶ _____ ODOMETER READING (No Tenths)
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale _____ | Dealer No. _____

Dealer's Name _____

_____ Agent's Signature _____ Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

_____ Signature of Buyer/Agent _____ Printed Name (same as signature)

### LIEN

LIENHOLDER TO BE RECORDED AND SHOWN ON NEW TITLE:
1ST LIEN IN FAVOR OF (NAME & ADDRESS) _____